UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
FABIAN WILLIAMS,

                Petitioner,

       - against -                                   **MEMORANDUM & ORDER**
                                                              04-CV-4507 (RRM)
GARY GREENE, Superintendent, Great Meadow
Correctional Facility,

                Respondent.
----------------------------------------------------------------X

**MAUSKOPF, United States District Judge.**

*Habeas corpus* Petitioner Fabian Williams ("Williams" or "Petitioner") was sentenced on November 17, 2000 in the Supreme Court of the State of New York, Nassau County, to an aggregate term of twenty-five years in prison following his conviction by a jury of sodomy in the first degree and sexual abuse in the first degree.

Petitioner timely filed the instant *pro se* Petition for a writ of *habeas corpus* under 28 U.S.C. § 2254 on October 20, 2004, alleging (1) that the state courts had misapplied the harmless error analysis set forth in *Chapman v. California*, 386 U.S. 18 (1967), in finding that, while he was denied his Sixth Amendment right to confrontation when the trial court restricted his counsel's cross-examination of complainant, that violation constituted harmless error, and (2) that he was denied his Fourteenth Amendment right to a fair trial when the prosecutor attempted on cross-examination to elicit the fact that he was incarcerated at the time of his trial.

For the reasons stated below, Petitioner's application for *habeas* relief is DENIED and the Petition is DISMISSED.

## BACKGROUND

On February 9, 2000, Fabian Williams, employed as a delivery man for 1-800-Flowers, delivered birthday balloons to a female student in Brookville Hall on the campus of C.W. Post College. After Williams completed the delivery he entered a bathroom for female students where an 18-year-old-student, Lisa N., was taking a shower. Lisa testified that Williams, who had his hand in his pocket, told her that he had a gun, ordered her to turn off the shower, and told her that if she screamed, he would kill her. Lisa further testified that Williams told her that he would break her neck if she screamed, then pushed her into a bent-over position, put his hand between her legs and "put [] his fingers back and forth" on her vagina. (Trial Tr. 921:15, Oct. 2, 2000.) Williams then forced Lisa into a crouching position so that she was facing him. He wrapped his legs on either side of her shoulders until she was immobilized and held her head while he forced his penis into her mouth until he ejaculated. Lisa testified that Williams then put a towel over her head, and ran into the hallway. Lisa ran into the hallway and shouted that Williams had just tried to rape her. Williams, the only man in the hallway, was seen by two female students on the hall as he quickly exited. Lisa underwent a physical examination at North Shore Hospital, and completed a sexual assault kit. An ultraviolet light revealed the presence of bodily fluid on Lisa's leg, and the physical examination revealed a reddened area on her right knee and pain in her shoulders.

The following day, Williams met with two Detectives at the 1-800-Flowers warehouse, acknowledged that he made the balloon delivery to C.W. Post on the day of the alleged incident, and admitted that he entered the women's bathroom, joined Lisa in the shower, and was fellated by her until he ejaculated. Detective Squeglia testified that Williams told him he requested sex from Lisa, and that he grabbed her by the neck when she refused his request. (Trial Tr. 879, 890, 894, Oct. 2, 2000.) Williams testified that he told Detective Squeglia that he did not have a gun

and that he never threatened Lisa. (Trial Tr. 1016–17, Oct. 4, 2000.) Williams was convicted following a jury verdict finding him guilty of sodomy in the first degree and sexual abuse in the first degree.

On November 17, 2000, following a jury trial, Petitioner was sentenced to concurrent determinate terms of incarceration of twenty-five years for the sodomy conviction and seven years for the sexual abuse conviction. Petitioner appealed his conviction, alleging that the trial court unconstitutionally deprived him of his right to confrontation under the Sixth Amendment and of his due process rights to a fair trial under the Fourteenth Amendment. On February 3, 2003, the Appellate Division unanimously affirmed Petitioner's conviction, and held that while the trial court had violated his Sixth Amendment rights, such error was harmless beyond a reasonable doubt, and that Petitioner's Fourteenth Amendment claim was unpreserved for appellate review and therefore procedurally barred. *People v. Williams*, 756 N.Y.S.2d 236 (N.Y. App. Div., 2d Dept. 2003). On July 17, 2003, Petitioner's motion for leave to appeal to the Court of Appeals was denied. *People v. Williams*, 796 N.E.2d 492 (N.Y. 2003). On October 20, 2004, Petitioner filed the instant Petition for writ of habeas corpus.

## DISCUSSION

Petitioner raises two claims in his Petition alleging violations of his Sixth and Fourteenth Amendment rights. First, he claims that the trial court violated the Confrontation Clause of the Sixth Amendment when it restricted his cross-examination of the victim as to whether or not she believed that Petitioner had a gun in his pocket. Second, he claims he was deprived of a fair trial by the prosecutor's cross-examination because the prosecutor knew that the court would not allow him to elicit that Petitioner was incarcerated at the time of trial, but attempted to do so indirectly during his cross-examination by accusing Petitioner of lying when he testified to living with his wife and children.

3

## I. The Confrontation Clause Claim

The only issue in dispute at Petitioner's trial was whether or not the sodomy was forcible. To convict Petitioner of sexual abuse in the first degree and sodomy in the first degree, as charged, the People had to prove that he engaged in sexual contact with the victim by forcible compulsion. *See* N.Y. Penal Law §§ 130.50, 130.65. "'Forcible compulsion' is defined, in part, as compelling another 'by either . . . use of physical force; or . . . a threat, express or implied, which places a person in fear of immediate death or physical injury to himself, herself or another person.'" N.Y. Penal Law § 130.00 (8)); *People v. Davis*, 799 N.Y.S.2d 324, 325–26 (N.Y. App. Div., 3d Dep't 2005). While Respondent conceded on Petitioner's direct appeal that "the trial court improperly denied the defendant's right to fully cross-examine the victim when it prevented questions about a prior inconsistent statement to the effect that she did not believe that the defendant was armed," *Williams*, 756 N.Y.S.2d at 236, Respondent argued that the error was harmless under the standard set forth in *Chapman v. California*, 386 U.S. 18 (1967).

The Appellate Division determined that Petitioner's right to confrontation under the Sixth Amendment was, in fact, violated when the trial court restricted Petitioner's cross-examination of the victim, but that this constitutional error was "harmless beyond a reasonable doubt." *Williams*, 756 N.Y.S.2d at 236. It reasoned that aside from the erroneously precluded evidence, the record contained sufficient evidence that Petitioner used physical force against the victim and threatened to break her neck, while in a position to do so, proving the necessary elements of forcible compulsion. *Id.*

"When a state court explicitly conducts harmless error review of a constitutional error, a *habeas* court must evaluate whether the state unreasonably applied *Chapman*." *Gutierrez v. McGinnis*, 389 F.3d 300, 306 (2d Cir. 2004). The Supreme Court has outlined the proper framework for applying the *Chapman* standard to Confrontation Clause errors. "'The correct

4

inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt.'" *Id.* at 308 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)). Whether the error is harmless depends upon several factors, including (1) how important the witness's testimony was to the prosecution's case, (2) whether the testimony was cumulative, (3) whether other evidence in the record corroborated or contradicted the witness on relevant matters, (4) whether other cross-examination of the witness was permitted and the extent of it, and (5) what effect the testimony would have on proof of defendant's guilt. *Id.* at 308–09.

"Under New York law, harmless error standards for both federal constitutional errors and non-constitutional errors are only implicated when there is already 'overwhelming' evidence of a defendant's guilt." *Gutierrez*, 389 F.3d at 307 (citing *People v. Crimmins*, 326 N.E.2d 787, 793–94 (N.Y. 1975)). "*Crimmins* . . . demonstrates how New York law has incorporated *Chapman* as the standard for reviewing federal constitutional errors for harmlessness." *Gutierrez*, 389 F.3d at 308. The *Crimmins* court discerned "two discrete considerations to be relevant in harmless error analysis generally: (1) the quantum and nature of proof of the defendant's guilt if the error in question were to be wholly excised, and (2) the causal effect which it is judged that the particular error may nonetheless have had on the actual verdict." *Id.* at 307. The federal test is focused on the second consideration, and is "perhaps the most demanding test yet formulated." *Id.* Ultimately, "the error is not harmless under the Federal test if 'there is a reasonable possibility that the error might have contributed to the conviction.'" *Id.*

Here, this Court finds that the Appellate Division's analysis was not an unreasonable application of the *Chapman* standard. Applying the *Chapman* factors to the present case, any error stemming from the trial court's restriction on the cross-examination of the victim as to

whether she believed that the defendant was armed is "harmless beyond reasonable doubt," *Williams*, 756 N.Y.S.2d at 236, and does not require reversal. *Gutierrez*, 389 F.3d at 308; *see also Chapman*, 386 U.S. at 24; *Fahy v. Connecticut*, 375 U.S. 85, 86–87 (1963).

To convict, the prosecution needed only to prove to the jury that Petitioner had used "forcible compulsion" in sodomizing the victim—*i.e.*, that he had threatened her with the use of physical force. *See supra*. The victim's testimony provided strong evidence of the Petitioner's guilt, even discounting her testimony on whether she believed that Petitioner was armed. She testified that Petitioner told her that he would break her neck if she screamed, forced her to crouch down, and immobilized her with his legs. Moreover, the other evidence, including testimony by a police detective as to Petitioner's statement admitting that he had grabbed the victim by the neck, the results of a medical examination of the victim that showed pain in the victims shoulders and knees, and a reddened area on her right knee provided sufficient evidence to corroborate the victim's testimony as to force. Furthermore, Petitioner's own testimony, that the victim, whom he had never met before, and whom he interrupted while showering in her dormitory, voluntarily fellated him, was unbelievable, and served to sully his credibility before the jury.

Even conceding error in restricting the cross-examination, the importance of whether or not the victim believed Petitioner had a gun was not dispositive to proving forcible compulsion, but was cumulative to the other testimony and evidence. Petitioner does not complain that his cross-examination of the victim was otherwise restricted. Testimony as to whether the victim believed that Petitioner had a gun would not have seriously weakened the strong proof of Petitioner's guilt. Any infringement of Petitioner's Sixth Amendment right to confront this

witness was harmless beyond a reasonable doubt. Because the Appellate Division's application of *Chapman* was objectively reasonable, Petitioner is not entitled to *habeas* relief on this claim.

## II. The Fourteenth Amendment Claim

Petitioner's second claim is that he was deprived of a fair trial because the prosecutor indirectly presented to the jury an inference that Petitioner was incarcerated. Petitioner during his direct testimony stated that he was currently residing with his wife and two children. (Trial Tr. 971, Oct. 4, 2000.) On cross-examination, the prosecutor, knowing that Petitioner was currently in jail, challenged the veracity of his statement, saying "You don't reside with your wife and two children now, do you, Mr. Williams?" (Trial Tr. 1018, Oct. 4, 2000.) Defense counsel objected, requested a conference, and asked the court not to allow the prosecutor to elicit testimony that Petitioner was in jail. The court ruled that the prosecutor could question Petitioner concerning whether or not he resided with his wife and children, but could not make any reference to the fact that he was in jail. Petitioner made no further objection, nor did he move for a mistrial.

Upon Petitioner's direct appeal raising his Fourteenth Amendment argument, the State argued that he had failed to preserve this claim because his counsel had not taken further exception to the court's ruling on his initial objection or moved for a mistrial. The Appellate Division agreed that the claim was unpreserved for appellate review, and dismissed it. *Williams*, 756 N.Y.S.2d at 237; *see also People v. Dawson*, 406 N.E.2d0020771, 773–74 (N.Y. 1980) (holding unpreserved claim by defendant who sought to have his conviction overturned on the grounds that certain questioning during cross-examination denied his right to a fair trial because, where objections were made and ruled on by the court and defense counsel failed to request a curative instruction or otherwise express any dissatisfaction with the adequacy of the court's ruling, the objections were unpreserved for appellate review).

*A.    Independent and Adequate State Grounds*

It is now axiomatic that in "cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal *habeas* review of the claims is barred." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Respondent argues that the Appellate Division relied on independent and adequate state law grounds to deny Petitioner's claim, and that *habeas* review by this Court is therefore foreclosed.

A procedural ground for dismissal is considered independent when it involves no discussion of the merits of the federal claim, appealing purely to state law as barring the petition. *See Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996). In determining whether a state procedural rule violation is an adequate ground on which to bar review of a federal claim in a *habeas corpus* proceeding, the question to be answered is whether application of the procedural rule is "firmly established and regularly followed" in the specific circumstances presented in the case, an inquiry that includes an evaluation of the asserted state interest in applying the procedural rule in such circumstances. *Cotto v. Herbert,* 331 F.3d 217, 240 (2d Cir. 2003).

The failure to preserve a claim for review on appeal renders the claim procedurally barred under relevant New York procedural law. *See* N.Y. Cr. Proc. L. § 470.05(2). Here, Petitioner's Fourteenth Amendment claim was dismissed on direct appeal as unpreserved for review under this provision of New York's procedural law because Petitioner failed to object to the ruling of the trial court. *See Williams*, 756 N.Y.S.2d at 237. The Court of Appeals for the Second Circuit has held that § 470.05(2) is a firmly established and regularly followed New York procedural rule. *See Garvey v. Duncan*, 485 F.3d 709, 718 (2d Cir. 2007). Accordingly, *habeas* review of Petitioner's Fourteenth Amendment claim is barred by independent and adequate state procedural grounds.

B.  *The Cause and Prejudice Standard*

As the Supreme Court has explained, where a *habeas* claim is deemed procedurally barred, a federal court will not entertain such a claim "absent a showing of cause and prejudice to excuse the default," or where the Petitioner can show that he or she is "actually innocent of the underlying offense." *Dretke v. Haley*, 541 U.S. 386, 388 (2004) (citing *Murray v. Carrier*, 477 U.S. 478 (1986)). To establish "cause" for the default, a *habeas* Petitioner must show that "some objective factor external to the defense" impeded the Petitioner's ability to present the claim." *Coleman*, 501 U.S. at 753. Examples of such a scenario would be "that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that some interference by officials made compliance impracticable." *Id.* (quoting *Carrier*, 477 I.S. at 492). To establish "prejudice," a Petitioner must show that "there is a reasonable probability" that the result of the trial would have been different absent the alleged constitutional violation. *Stickler v. Greene*, 527 U.S. 263, 289 (1999).

Here Petitioner has offered no explanation for the failure to preserve his Fourteenth Amendment Claim at trial.[1] Where a petitioner has not demonstrated cause, the court need not address the issue of prejudice. *See Rivera v. Artus*, Civ. A. No. CV-04-5050, 2007 U.S. Dist. LEXIS 79345, at *20 (E.D.N.Y. Oct. 25, 2007); *see also Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir.1985) ("[W]e need not, in light of our conclusion that there was no showing of cause, reach the question of whether or not [the petitioner] showed prejudice."). Nor has Petitioner demonstrated that he is actually innocent. Therefore there are no grounds for this Court to find that Petitioner's claims are not procedurally barred.

---

[1] Petitioner raised his Fourteenth Amendment Claim in his Petition, filed on October 20, 2004, but provided no explanation for his failure to properly raise and preserve this claim at trial. Furthermore, despite multiple letters to the court between February 2005 and January 2008, including a request for additional time to file his traverse on November 26, 2007, which was granted, Petitioner never filed any such traverse or other papers in support of his Petition. Accordingly this Court has no basis for a finding of cause to his procedural default.

## CONCLUSION

For the reasons set forth above, we hold that the Appellate Division (1) reasonably applied *Chapman* in its harmless error analysis and (2) properly found Petitioner's Fourteenth Amendment claim to be procedurally barred. Petitioner's application for habeas relief is DENIED and the Petition is DISMISSED. As Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. *See* 28 U.S.C. § 2253.

SO ORDERED.

Dated: Brooklyn, New York
August 19, 2009

_____
ROSLYNN R. MAUSKOPF
United States District Judge